**VERNON JOHNSON FAMILY LIMITED PARTNERSHIP, et al., Plaintiff,**

v.

**BANK ONE TEXAS, N.A., et al., Defendant.**

No. C99–0913L.

United States District Court, W.D. Washington, at Seattle.

Jan. 7, 2000.

Norman K. Short, Norman Morley Short, P.S., Silverdale, WA, for Vernon Johnson Family Limited Partnership, Wilbur Stubberud, Jean Stubberud, Lucille Badura, Baptist Missionary Association of Mississippi.

James L. Magee, Graham & Dunn, Seattle, WA, Philip S. Warden, Pillsbury Madison & Sutro LLP, San Francisco, CA, Sybille Dreuth, Pillsbury Madison & Sutro, Los Angeles, CA, for Bank One Texas NA.

Pamela S. Palmer, Latham & Watkins, Los Angeles, CA, for SunTrust Banks of Florida Inc., SunTrust Bank Central Florida National Association.

## ORDER GRANTING MOTIONS TO DISMISS DEFENDANT SUNTRUST BANK, CENTRAL FLORIDA, N.A. AND BANK ONE TEXAS, N.A.

LASNIK, District Judge.

This matter comes before the Court on motions to dismiss this action against SunTrust Bank, Central Florida, N.A. ("SunTrust") and Bank One Texas, N.A. ("Bank One") for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2).

### BACKGROUND

Plaintiffs purchased certain notes from a Florida Company, First Lenders Indemnity Corporation ("FLIC"), which were to be secured by auto loan collateral. FLIC allegedly sold these notes in offerings administered by the two defendant banks—SunTrust and Bank One (collectively "the banks")—under trust indentures. Under

these trust indentures, FLIC sent funds and subscription agreements to the banks from investors to whom FLIC had sold its notes. The banks then deposited the funds in trust accounts in Florida and Texas, which they administered pursuant to the provisions of the trust indentures. SunTrust administered the trust accounts exclusively in Florida; Bank One did so from its offices in Texas and Ohio. Periodically, upon written request by FLIC, the banks issued authenticated FLIC promissory notes to the investors.

In February 1997, Bank One notified investors that FLIC was in default under the Texas trust indenture. Bank One had learned that FLIC's portfolio contained insufficient funds. In March 1997, less than five months after SunTrust began serving as Indenture Trustee for FLIC, SunTrust notified investors that FLIC was in default under the Florida trust indenture. Among other things, SunTrust had learned that FLIC was selling notes outside the Florida trust indenture and failing to provide SunTrust with subscriber names or funds. Shortly thereafter, FLIC's creditors filed a petition in the United States Bankruptcy Court for the Central District of California placing FLIC into involuntary bankruptcy.[1]

Since the filing of the bankruptcy petition, the banks have been involved in litigation before the bankruptcy court. SunTrust seeks to distribute approximately $17.8 million in collateral in which it holds a security interest for the benefit of investors. Bank One is seeking to distribute approximately $19 million held in trust, and $3.9 million in collateral which is being liquidated. In addition, the banks are defending a class action pending in a California state court, which was filed for the benefit of all FLIC noteholders.

Plaintiffs have filed this class action complaint against the banks asserting claims for violations of the Trust Indenture Act, 15 U.S.C. § 77aaa et seq, breach of fiduciary duty, and breach of contract.[2] The banks have moved to dismiss the complaint on the ground that this Court lacks personal jurisdiction over them.

### DISCUSSION

■ The plaintiff bears the burden of establishing personal jurisdiction. *See Ziegler v. Indian River County,* 64 F.3d 470, 473 (9th Cir.1995) (*citing Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.,* 907 F.2d 911, 912 (9th Cir.1990)). A plaintiff need only make a prima facie showing of jurisdictional facts through materials submitted in opposition to a defendant's motion to dismiss. *See Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir.1995); *Ziegler,* 64 F.3d at 473. To make such a showing, a plaintiff must establish facts that, if true, would support jurisdiction over the defendant. *See Ballard,* 65 F.3d at 1498 (citing *Data Disc. Inc. v. Systems Technology Associates,* 557 F.2d 1280, 1285 (9th Cir.1977)).

■ In order for this Court to exercise personal jurisdiction over the banks, there must be an applicable rule or statute which potentially confers jurisdiction over the defendants, *and* assertion of such jurisdiction must be consistent with constitutional principles of due process. *See Securities Investor Protection Corp. v. Vigman,* 764 F.2d 1309, 1313–14 (9th Cir.1985); *Amba Marketing Systems, Inc. v. Jobar International, Inc.,* 551 F.2d 784, 787 (9th Cir.1977).

---

1. FLIC had engaged in extensive activities in California, and certain individuals involved in establishing and operating FLIC reside in southern California. See Palmer Decl. ¶ 4.

2. The plaintiffs' complaint states a claim for "breach of trust indenture agreements," "pursuant to 15 U.S.C." First Am. Compl. at 9.

The complaint does not state which section of Title 15 (which includes all federal statutes relating to commerce and trade) the defendants are alleged to have violated, although the complaint itself is styled "Complaint for Violations of the Trust Indenture Act, 15 U.S.C. § 77aaa et seq. . . . ." First Am. Compl. at 1.

## A. The Trust Indenture Act

■ Plaintiffs argue that the Trust Indenture Act, 15 U.S.C. § 77aaa *et seq.*, under which they purport to sue, confers jurisdiction over defendants. In support of this argument, plaintiffs have cited to 15 U.S.C. § 77v(a), which confers federal subject matter jurisdiction, and provides for nationwide venue and service of process. Plaintiffs correctly note that nationwide service of process provisions in federal statutes can confer personal jurisdiction over defendants on all federal district courts. *See, e.g., Vigman,* 764 F.2d at 1313–14 .(construing similar language in the Securities Exchange Act of 1934).

However, there is a significant flaw in plaintiffs' argument that plaintiffs have glossed over in briefing and arguing this matter. The TIA does not apply to "any security exempted from the provisions of the Securities Act of 1933 ..." 15 U.S.C. § 77ddd(a)(4)(A). Evidence supplied by the plaintiffs indicates that the FLIC notes at issue in this case were exempt from the registration provisions of the 1933 Act. *See* Pl.'s Opp, Fowler Decl. ¶ 6. The disclosure document attached to Mr. Fowler's declaration states "BY VIRTUE OF THE NINE MONTH (270 DAYS) TERM OF THE NOTES, SECURITY AND RELATED CREDIT ENHANCEMENTS, THE COMPANY BELIEVES THAT THE NOTES ARE EXEMPT SECURITIES PURSUANT TO SECTION 3(a)(3) OF THE SECURITIES ACT OF A1933 [sic], AS AMENDED ..." Fowler Decl., Ex. A at 2. The section of the 1933 Act to which this disclosure document refers provides that "[a]ny note ... which arises out of a current transaction or the proceeds of which have been or are to be used for current transactions, and which has a maturity at the time of issuance of not ex-ceeding nine months" are exempt from the terms of the 1933 Act. 15 U.S.C. § 77c(a)(3).

At oral argument, plaintiffs' counsel argued that the failure to qualify the FLIC notes under the TIA was itself a violation of the TIA.[3] Plaintiffs appear to argue that the notes were not exempt and should have been registered under the 1933 Act, which would have brought them under the ambit of the TIA. *See* Hr'g Tr. at 18 ("[The notes] were never qualified, but they were in violation of the law. They were not qualified in violation of the Trust Indenture Act. Can one escape the reach of federal law by simply having nothing to do with it, refusing it?"). But the banks as indenture trustees were not responsible for registering the notes under the 1933 Act. If plaintiffs are challenging the exempt status of the notes, that is not a claim against the indenture trustee, nor is it a claim arising under the TIA. As plaintiffs acknowledge, these notes were not qualified under the TIA. *Id.* Therefore, no basis for exercising personal jurisdiction over the defendants can arise from that statute. *See Boatmen's First National Bank of Kansas City v. Kansas Public Employees Retirement System,* 915 F.Supp. 131, 135 (W.D.Mo.1996) (no federal claim exists under TIA where indentures were not qualified and securities were sold under exemption from registration).

## B. Washington's Long–Arm Statute

Even without a federal claim under the TIA, this Court could exercise jurisdiction over defendants on plaintiffs' other claims by looking to Washington's long-arm statute as an alternative statutory basis of jurisdiction. *See Terracom v. Valley Nat'l*

3. Plaintiffs' counsel claimed at oral argument not to be suing for violation of the TIA, but rather for "other breaches of the trust indentures." Hr'g Tr. at 18. That is certainly not the position taken by plaintiffs in the First Amended Complaint, or in the earlier briefing of these motions to dismiss. Moreover, the Court does not see how the TIA could possibly constitute a basis for jurisdiction if this is solely a breach of contract action under the trust indentures. Accordingly, the Court has assumed for purposes of resolving these motions that the TIA claim stated in the First Amended Complaint is still being asserted by plaintiffs.

*Bank,* 49 F.3d 555, 559 (9th Cir.1995). The Washington Supreme Court has held that the state's long-arm statute "extends jurisdiction to the limit of federal due process." *See Chan v. Society Expeditions, Inc.,* 39 F.3d 1398, 1405 (9th Cir.1994) (*citing Shute v. Carnival Cruise Lines,* 113 Wash.2d 763, 771, 783 P.2d 78 (1989)); *see also, Shute v. Carnival Cruise Lines,* 897 F.2d 377, 380 n. 2 (9th Cir.1990) ("[T]he Washington long-arm statute imposes no limitations beyond those imposed by due process"), *rev'd on other grounds,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). The Court must determine, therefore, whether exercising jurisdiction over the banks in this case would comport with federal due process.

## C. *Federal Due Process*

■■ Due process requires that a nonresident defendant have certain "minimum contacts" with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95, (1945); *see also, Doe v. American Nat'l Red Cross,* 112 F.3d 1048, 1050 (9th Cir.1997). In evaluating a nonresident defendant's contacts with the forum state, courts focus on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Those contacts may support the exercise of either general jurisdiction or specific jurisdiction over the defendant. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414–15,

nn. 8–9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Doe,* 112 F.3d at 1050.

## 1. *General Jurisdiction*

■■ General jurisdiction may be exercised over a nonresident defendant where "the defendant's activities in the state are 'substantial' or 'continuous and systematic,' ... even if the cause of action is unrelated to those activities." *Doe,* 112 F.3d at 1050–51 (quoting *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1396 (9th Cir.1986)).

In this case, plaintiffs have not alleged that the banks have conducted any substantial, continuous, or systematic activities in Washington.[4] Moreover, plaintiffs do not contradict SunTrust's statements, supported by declarations attached to its motion, that SunTrust does no business in Washington, maintains no branches, offices, employees, or agents in Washington, and does not advertise or solicit its business in Washington. *See* Kail Decl. ¶¶ 2, 7. Nor do plaintiffs contradict Bank One's declarations attesting that Bank One has no offices, no employees, no mail box, no telephone listing, and no agent designated for service of process in Washington. Salaverria Decl. ¶ 8. Bank One leases no property and owns no real estate in Washington, conducts little, if any, corporate trust business or indenture trust business in Washington, and neither advertises nor solicits its business in Washington. *Id.* SunTrust acknowledges that it may occasionally provide services in Florida to customers from Washington, but it performs no services in Washington. Bank One

---

4. Plaintiff's complaint originally alleged that SunTrust and Bank One were Florida and Texas corporations, respectively, found and transacting business in the Western District of Washington. The Court was later advised, however, that plaintiffs' counsel had misidentified certain branches of Crestar Financial Corporation (a separately held subsidiary of SunTrust's parent corporation) as branches of defendant SunTrust. Plaintiffs' counsel also misidentified a branch of Bank One Financial Services (a separately held subsidiary of Bank One's parent corporation) as a branch of de-

fendant Bank One. Based upon plaintiffs' briefs in opposition to the banks' motions to dismiss, and the declaration of plaintiffs' counsel attached thereto, it appears plaintiffs no longer contend that the banks transact any business in the State of Washington. Rather, plaintiffs argue that the banks "participated in the sale" of FLIC's notes to Washington investors. In either case, the evidence submitted by the banks shows they engage in no substantial, continuous or systematic activities in Washington.

states that it may occasionally make an isolated commercial loan to a Washington business, but it conducts no regular commercial or personal loan programs in Washington. *Id.* Accordingly, there is no basis for the Court to exercise general jurisdiction over the banks.

### 2. *Specific Jurisdiction*

■ Specific jurisdiction may be exercised over a nonresident defendant who has not had substantial or continuous and systematic contact with the foreign state if (1) the non resident defendant purposefully directed his activities or consummated some transaction with the forum or a resident thereof, or performed some act by which he purposefully availed himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim is one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *See Doe,* 112 F.3d at 1051 (citations omitted); *Core–Vent Corp. v. Nobel Industries AB,* 11 F.3d 1482, 1485 (9th Cir.1993).

### a. **Purposeful Availment**

■ Plaintiffs have not alleged that the banks purposefully directed their activities or consummated a transaction with Washington residents, thereby availing themselves of the privilege of conducting activities in Washington and invoking the benefits and protections of Washington's laws.[5] Rather, plaintiffs allege that each of the banks "knowingly allow[ed] the use of its name" in the sale of notes by FLIC to investors in Washington, and thereby "participated in the sale" of FLIC's notes to Washington investors within the meaning of the Trust Indenture Act. It is not necessary for the Court to determine whether the banks "participated in the

sale" of the notes within the meaning of the TIA because, as described above, this constitutional analysis is separate from the statutory analysis. Therefore, the Court must consider whether knowingly allowing the use of the banks' names in the circulation of FLIC sales materials constituted purposeful availment of the privilege of conducting activities in Washington.

■ Purposeful availment requires that the nonresident defendant engage in activity that is "purposefully directed" at the target state, *Asahi Metal Industry Co., Ltd. v. Superior Court,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), or "expressly aimed" and "intentionally directed" at forum residents. *Calder v. Jones,* 465 U.S. 783, 789–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). The facts before the Court show that the banks did nothing to purposefully direct their activities toward the state of Washington. Once the trust indentures were executed between FLIC and the banks, FLIC and its agents offered, promoted, and sold the notes in many states. After the notes were sold by FLIC, the banks merely administered the trust accounts from their offices in Florida, Texas and Ohio.[6]

■ Plaintiffs emphasize that the banks had fiduciary duties under the trust indentures to act for the benefit and protection of the noteholders, including Washington residents. However, the Supreme Court held in *Hanson v. Denckla,* 357 U.S. 235, 252, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), that a Florida court could not exercise personal jurisdiction over a nonresident trustee simply because the settlor resided in Florida. Where the trust was formed and initially administered in Delaware, and the trustee's principal place of business was in Delaware, the settlor's

---

**5.** The trust indentures were consummated between FLIC and each of the banks. The purchasers of notes later became beneficiaries of the trust indentures, but were not parties to the transaction creating the trust indentures.

**6.** Plaintiffs allege that an executive and trust officer of Bank One made certain verbal rep-

resentations regarding the legitimacy and safety of the program to William Fowler, an agent of FLIC who sold notes in Washington. Mr. Fowler, however, is not a party to this action. Plaintiffs do not allege that any Bank One employee made any representations to them.

residence in Florida did not subject the Delaware trustee to personal jurisdiction in Florida. The Court found that the trustee's obligations arose from the Delaware trust agreement and not from any "privilege the defendant exercised in Florida." *Id.* Here, the same reasoning applies. SunTrust's duties arose from the Florida trust indenture, which was negotiated, executed, and performed in Florida, and which is governed by Florida law. Bank One's duties arose from the Texas trust indenture, which was negotiated and executed in Texas, performed in Texas and Ohio, and which is governed by California law. None of the banks' duties to the plaintiffs arose from any privilege exercised in Washington.[7]

■■■ While plaintiffs might argue that it was foreseeable that FLIC or its agents might sell the notes in Washington, the Supreme Court has stated that "foreseeability ... has never been a sufficient benchmark for personal jurisdiction." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Even if the banks were aware that FLIC offered, promoted, and sold notes in Washington, an "awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Asahi Metal Indus.,* 480 U.S. at 112, 107 S.Ct. 1026. Unilateral activity by a plaintiff claiming a relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. *Burger King Corp. v. Rudzewicz,*

471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Such a test would impermissibly "shift the focus of the judicial inquiry from the purposeful activities of the defendant within the forum to the random or fortuitous presence or residence of the plaintiff." *Young v. Colgate–Palmolive Co.,* 790 F.2d 567, 572 (7th Cir. 1986).[8]

In sum, the plaintiffs have failed to plead facts showing that the banks purposefully availed themselves of the privilege of conducting activities in Washington. All facts offered to the Court suggest that the banks engaged in no affirmative conduct directed at Washington or Washington residents.

### b. Arising Out of Forum–Related Activities

■■■ The second prong of the specific jurisdiction test is satisfied if plaintiffs can establish that their cause of action would not have arisen "but for" the banks' contacts with Washington. Plaintiffs argue that the existence of SunTrust and Bank One as indenture trustees induced some plaintiffs to purchase the FLIC notes. Accordingly, while the Court has found that such contacts were insufficient to constitute purposeful availment, the plaintiffs nonetheless have at least made a prima facie showing that "but for" the banks' contacts, the plaintiffs' injury would not have occurred.

### c. Reasonableness

■■■ The third and final prong of the specific jurisdiction test is whether

---

7. It is important to note that "[t]he duty imposed by an indenture of trust is not a traditional fiduciary duty." *Shawmut Bank, N.A. v. Kress Assoc.,* 33 F.3d 1477, 1491 (9th Cir. 1994). An indenture trustee has no duty of undivided loyalty. *Meckel v. Continental Resources Co.,* 758 F.2d 811, 816 (2d Cir.1985) ("Unlike the ordinary trustee, who has historic common-law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement").

8. As SunTrust points out, such reasoning would render individual directors of national corporations subject to suit in any state where shareholders happen to reside. *See Miller v. American Tel. & Tel. Co.,* 394 F.Supp. 58, 64 (E.D.Pa.1975) ("any individual accepting a directorship of a national corporation would effectively be conceding to in personam jurisdiction over himself or herself in any state ..."), *aff'd mem,* 530 F.2d 964 (3d Cir.1976).

exercising personal jurisdiction over the nonresident defendant is reasonable, as an unreasonable exercise of personal jurisdiction would violate due process. *See Ziegler*, 64 F.3d at 474–75. The Ninth Circuit considers seven factors to determine whether the exercise of specific jurisdiction is reasonable: (1) the extent of the defendant's purposeful contacts with the state; (2) the burden on the defendant of litigating in the forum state; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See Ziegler*, 64 F.3d at 475.

### i. Extent of the banks' contacts with Washington

"The degree to which a defendant interjects himself into the state affects the fairness of subjecting him to jurisdiction." *Data Disc*, 557 F.2d at 1288. As discussed above, the Court has found that the banks' contacts with Washington were minimal. Accordingly, this factor weighs in favor of the banks.

### ii. Burden on the banks of litigating in Washington

The burden on the banks of litigating in Washington is substantial, particularly in light of the two related cases currently being litigated in California, and the fact that all of the witnesses and documents relating to the banks' involvement in this matter are likely to be found in Florida, Texas, Ohio and California. The alternative burden of requiring the plaintiffs to litigate in Florida, Texas, Ohio or California is comparable. "Where burdens are equal, this factor tips in favor of the defendant because the law of personal jurisdiction is 'primarily concerned with the defendant's burden.'" *Ziegler*, 64 F.3d at 475 (*quoting Terracom*, 49 F.3d at 561). Therefore, this factor weighs in favor of the banks.

### iii. Extent of conflict with Florida, Ohio or Texas' sovereignty

"A state has a special interest in exercising jurisdiction over those who have committed tortious acts within the state ..." *Data Disc*, 557 F.2d at 1288. Similarly, "'[a state] maintains a strong interest in providing an effective means of redress for its residents [who are] tortiously injured.'" *Core–Vent*, 11 F.3d at 1489 (*quoting Sinatra v. National Enquirer*, 854 F.2d 1191, 1200 (9th Cir.1988)). "Nevertheless, it may be unreasonable to subject an out-of-state defendant to jurisdiction where the allegedly tortious act is committed outside of the forum state, having only an effect within the state, if the act is negligent rather than purposeful." *Data Disc*, 557 F.2d at 1288. In this case, Florida, Texas, Ohio and Washington would have an interest in adjudicating this dispute. Therefore, this factor does not weigh in favor of any party.

### iv. Washington's interest in adjudicating the dispute

As described above, states have a strong interest in exercising jurisdiction over those who cause injury to its residents. *See Data Disc*, 557 F.2d at 1288. On the other hand, a state has little interest in exercising jurisdiction over those who commit tortious acts upon nonresidents outside its borders. *See Asahi Metal Indus. Co.*, 480 U.S. at 114–15, 107 S.Ct. 1026.

While Washington has a genuine interest in adjudicating the dispute between those plaintiffs who are Washington residents and the banks, the vast majority of the members of the purported class are nonresidents. Moreover, the banks performance of, or failure to perform, their duties occurred exclusively in Florida, Ohio and Texas and all of the witnesses and documents relating to the banks' performance of their duties as indenture trustee are located in other states. Accordingly, Washington's interest in adjudicating this dispute does not weigh heavily.

##### v. Efficient resolution of the dispute

Courts evaluate the efficiency of adjudicating a dispute in the forum state by looking to the likely location of witnesses and evidence. *Terracom*, 49 F.3d at 561. While at least one of the plaintiffs (and FLIC's apparent agent, William Fowler, who sold FLIC notes to certain plaintiffs) are located in Washington, the banks' performance of their duties under the trust indentures occurred elsewhere. Virtually all of the relevant documents are likely to be located in Florida, Ohio and Texas. Moreover, the witnesses likely to have knowledge of the banks' negotiation, execution, and performance of the trust indentures are likely to be found in Florida, Ohio, Texas and California. Accordingly, this factor weighs strongly in favor of the banks.

##### vi. Importance of forum to plaintiffs' interest in convenient and effective relief

It is unclear why the plaintiffs wish to litigate this case now, in Washington. In California, there are currently two related lawsuits pending—a federal bankruptcy proceeding and a class action that purports to represent the plaintiffs in this case. The Court does not believe that the plaintiffs will be afforded the most convenient and effective relief by litigating this case, which could present the risk of duplicate or conflicting rulings vis-a-vis the California courts. Therefore, the Court finds that this factor weighs in favor of the banks.

##### vii. Existence of an alternative forum

The plaintiffs bear the burden of proving the unavailability of an alternative forum. *See Core–Vent*, 11 F.3d at 1490. The plaintiffs cannot, of course, prove such unavailability when a parallel action is already being litigated in another jurisdiction. In addition to California, where the class action litigation is pending, Florida or Texas would also offer alternative fora for the resolution of this dispute. This factor therefore weighs in favor of the banks.

##### viii. Balancing the seven factors

While not all seven factors favor the defendants, the majority do. Specifically, the extent of the banks' purposeful interjection into Washington, the burden on the banks of litigating in Washington, the efficiency of litigating in Washington, the plaintiffs' interest in convenient and effective relief, and the existence of an alternative forum all weigh against this Court's exercise of jurisdiction over the banks. Only Washington's interest in adjudicating the dispute weighs in favor of the plaintiffs, and as described above, that interest is weak. Accordingly, the Court finds that it would be unreasonable in light of due process for the Court to exercise personal jurisdiction over the banks.

#### d. Conclusion

The Court finds that the banks did not purposefully avail themselves of the privileges of conducting activities in Washington, thereby submitting themselves to the jurisdiction of this Court. Second, based on the facts as offered by the parties, and based on the factors described above, the Court's exercise of personal jurisdiction over the banks would be unreasonable as a matter of due process. Thus, the Court finds that it does not have specific jurisdiction over the banks.

### CONCLUSION

Because the plaintiffs have failed to state facts that would support the exercise of personal jurisdiction over SunTrust and Bank One Texas, this Court must grant both defendants' Motions to Dismiss. Therefore, the motions to dismiss are hereby GRANTED, and the action is hereby DISMISSED as to defendants SunTrust Bank, Central Florida, N.A. and Bank One Texas, N.A. Defendants' Motions for a Stay of Proceedings are STRICKEN as moot.