**FIRST MORTGAGE CORPORATION, Plaintiff,**

v.

**STATE STREET BANK AND TRUST COMPANY, et al, Defendants.**

**No. 2:01–CV–00201C.**

United States District Court, D. Utah, Central Division.

Nov. 27, 2001.

Dennis C. Ferguson, George A. Hunt, Williams & Hunt, Salt Lake City, UT, for First Mortgage Corp.

Gordon C. Strachan, Strachan & Strachan, Park City, UT, Joseph K. Scully, Deborah S. Griffin, Peabody & Arnold, Boston, MA, for State Street Bank & Trust.

James R. Holbrook, Craig J. Jacobsen, Callister Nebeker & McCullough, Salt Lake City, UT, for Chase Manhattan Mortgage.

## ORDER

CAMPBELL, District Judge.

This matter is before the court on Defendant State Street Bank and Trust's ("State Street") motion to dismiss the complaint of Plaintiff First Mortgage Corporation ("First Mortgage") for lack of personal jurisdiction. Having considered the arguments made by counsel at a September 17, 2001 hearing, as well as applicable case law, the court grants State Street's motion to dismiss.

### Standard of Review

■ The plaintiff in a civil case bears the burden of establishing that the court has personal jurisdiction over the defendant. *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir.1998). When a defendant files a motion to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2), the plaintiff must make only a prima facie case of personal jurisdiction in order to defeat the motion. *See OMI Holdings*, 149 F.3d at 1091; *accord Patriot Sys., Inc. v. C-Cubed Corp.*, 21 F.Supp.2d 1318, 1320 (D.Utah 1998). This may be done through well-pleaded facts in the complaint or in supporting affidavits. *See OMI Holdings*, 149 F.3d at 1091. "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir.1988); *accord Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir.1995).

### Factual Background

Plaintiff First Mortgage is a Utah corporation with its principal place of business in Salt Lake City, Salt Lake County, Utah. Defendant State Street is a Massachusetts banking corporation, a subsidiary of its parent corporation, State Street Corporation. Defendant Chase Manhattan Mortgage Corporation ("Chase") is a New Jersey corporation and has its principal place of business in New Jersey. Chase is registered to transact business in the State of Utah with the Utah Department of Commerce; State Street is not. State Street's principal place of business is in Massachusetts, and it maintains no branches, offices, telephone listings or employees in Utah.

This dispute arises out of allegations relating to a Trust Agreement dated May 1, 1988 ("Trust"), and regarding pass-back securities backed by first mortgage loans. Although not an original owner of these securities issued under the Trust, Plaintiff is successor-in-interest and current holder of all of the Sequence B Certificates issued under the Trust. Plaintiff alleges that Chase negligently managed the Trust's mortgages and failed to service the mortgage loans properly. More importantly for the purposes of the matter presently before the court, Plaintiff also alleges that State Street breached its fiduciary duties under the Trust by failing to oversee and cure Chase's allegedly wrongful conduct as Master Servicer of the mortgages under the Trust.

Through uncontroverted evidence, State Street has established that it does not transact business as a matter of course in

Utah. It does not conduct personal or commercial loan programs in Utah. It does not lease or control any property or assets in Utah. State Street does not have an agent for service of process in Utah. It neither pays taxes in Utah, nor generates a substantial percentage of its sales through revenue generated from Utah customers, nor recruits employees in Utah.

State Street's activities relating to its fiduciary duties under the Trust have also all occurred outside of Utah. The Trust itself is governed by New York law and is managed and negotiated by entities in New York, Massachusetts, and New Jersey. The Trust assets consist of mortgages and properties located mostly in Connecticut and none of these properties is located in Utah. State Street's activities in administering the Trust have been performed in or from its corporate trust office in Boston, Massachusetts. And all of its communications with Chase concerning the administration of the Trust were between State Street's Boston office and Chase's offices in Ohio and Florida.

State Street's contact with Plaintiff, and Utah, is very attenuated. Plaintiff purchased the Sequence B Certificates of the Trust from the Federal Deposit Insurance Corporation ("FDIC"), not from State Street or Chase. State Street was not involved with this sale in any way. Since Plaintiff bought the Sequence B Certificates, State Street has remitted monthly payments to Plaintiff by wire transfer. These transfers were effected by State Street instructing the Federal Reserve Bank of Boston to debit the appropriate amount from State Street's account and to credit a bank account designated by Plaintiff. State Street has never had any input into what bank account Plaintiff designated to receive the transferred funds.

No State Street employee ever has ever visited Utah for any reason related to the Trust. The only other connection State Street has had with Utah regarding the Trust has been communications about the present controversy. Since the Spring of 1999, State Street has communicated with representatives of First Mortgage by letter, telephone, and e-mail concerning the issues of this case. This communication consists of approximately twenty letters and less than twelve telephone calls placed or sent by State Street from Boston to First Mortgage representatives who were in Utah.

## Discussion

### I. Personal jurisdiction

The basis for jurisdiction in this case is the diversity of the parties' citizenship. This court must therefore apply the law of the forum state, Utah, in determining whether personal jurisdiction exists. *See Fidelity and Casualty Co. of New York v. Philadelphia Resins Corp.*, 766 F.2d 440, 442 (10th Cir.1985); *Harnischfeger Eng'rs, Inc. v. Uniflo Conveyor, Inc.*, 883 F.Supp. 608, 612 (D.Utah 1995). Utah courts may apply either "general" or "specific" personal jurisdiction. As explained by the Utah Supreme Court:

> General personal jurisdiction permits a court to exercise power over a defendant without regard to the subject of the claim asserted. For such jurisdiction to exist, the defendant must be conducting substantial and continuous local activity in the forum state. In contrast, specific personal jurisdiction gives a court power over a defendant only with respect to claims arising out of the particular activities of the defendant in the forum state. For such jurisdiction to exist, the defendant must have certain minimum local contacts.

*Arguello v. Industrial Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992) (citations omitted), *quoted in Harnischfeger*, 883 F.Supp. at 611; *accord Helicopte-*

*ros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 414 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). First Mortgage maintains that this court has both general and specific personal jurisdiction over Defendant State Street and these contentions are addressed in order below.

### A.  General Personal Jurisdiction

State Street does not conduct substantial and continuous activity in Utah such that this court would have general jurisdiction over it. General personal jurisdiction allows a court to hear matters involving a non-resident defendant regardless of the subject matter of the claim asserted. *See Soma Medical Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1295 (10th Cir.1999) *citing Arguello,* 838 P.2d at 1122. For a court to exercise general personal jurisdiction, "the defendant must be conducting substantial and continuous activity in the forum state." *Soma,* 196 F.3d at 1295, *quoting Arguello,* 838 P.2d at 1122. As the Tenth Circuit Court of Appeals has noted, the relevant factors to consider whether general jurisdiction exists are whether the corporate defendant is:

1. engaged in business in this state;
2. licensed to do business in this state;
3. owning, leasing, or controlling property (real or personal) or assets in this state;
4. maintaining employees, offices, agents, or bank accounts in this state;
5. present in that shareholders reside in this state;
6. maintaining phone or fax listings within this state;
7. advertising or soliciting business in this state;
8. traveling to this state by way of salespersons, etc.;
9. paying taxes in this state;
10. visiting potential customers in this state;
11. recruiting employees in the state;
12. generating a substantial percentage of its national sales through revenue generated from in-state customers.

*Soma,* 196 F.3d at 1295–96, *quoting Buddensick v. Stateline Hotel Inc.,* 972 P.2d 928, 930–31 (Utah Ct.App.1998), *cert. denied,* 982 P.2d 88 (Utah 1999), *cert. denied,* 528 U.S. 928, 120 S.Ct. 324, 145 L.Ed.2d 253 (1999). As discussed above in the background section, State Street has offered uncontroverted affidavit evidence that none of these factors apply to it. Plaintiff has offered affidavit and supporting documents that allude to the fact that other subsidiaries of State Street's parent company, State Street Corporation, such as State Street Capital Markets, LLC, advertise and solicit business in Utah via websites and national publications. Advertising that makes its way to Utah or soliciting business is insufficient to justify general personal jurisdiction. *See, e.g., Doering v. Copper Mountain, Inc.,* 259 F.3d 1202, 1211 (10th Cir.2001); *Harnischfeger,* 883 F.Supp. at 612; *Frontier Fed. Sav. & Loan v. National Hotel Corp.,* 675 F.Supp. 1293, 1296 n. 3 (D.Utah 1987) (stating that "Utah appears to require the solicitation within the state plus some other factor such as maintaining a warehouse or making deliveries"). The evidence offered by Plaintiff, moreover, is irrelevant because it does not demonstrate that the Defendant in this case, State Street, engaged in any of these activities; rather it suggests that State Street Corporation's other subsidiaries may have tenuously connected themselves to this forum. In sum, the uncontroverted evidence offered by Defendant State Street demonstrates that this court does not have general personal jurisdiction over it.

### B.  Specific Personal Jurisdiction

Plaintiff has also failed to establish that this court has specific personal

jurisdiction over Defendant State Street. "In Utah, a three-part inquiry is used to determine whether specific personal jurisdiction exists: (1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute; (2) a 'nexus' must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirements of federal due process." *Harnischfeger*, 883 F.Supp. at 612–13; *accord STV Int'l Marketing v. Cannondale Corp.*, 750 F.Supp. 1070, 1074 (D.Utah 1990); *Far West*, 46 F.3d at 1074 (plaintiff must demonstrate that "jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.").

### 1. Utah's Long–Arm Statute and Federal Due Process

By statute, the Utah Legislature has determined that Utah's long-arm statute should be "applied so as to assert jurisdiction to the fullest extent permitted by the due process clause." Utah Code Ann. § 78–27–22. As a result, the first and third parts of the specific jurisdiction inquiry are identical, and Utah courts "frequently make a due process analysis first because any set of circumstances that satisfies due process will also satisfy the long-arm statute." *SII MegaDiamond, Inc. v. American Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998); *see also Soma*, 196 F.3d at 1298 (proceeding directly to constitutional analysis); *Far West*, 46 F.3d at 1075 (same).

▉▉▉ Determining whether the court's exercise of personal jurisdiction over the nonresident defendant violates the Due Process Clause involves a two-step inquiry: First, we must determine whether the defendant has such minimum contacts with the forum state that he should reasonably anticipate being haled into court there .... Within this inquiry we must determine whether the defendant purposefully directed its activities at residents of the forum, ... and whether the plaintiff's claim arises out of or results from actions by the defendant *himself* that create a substantial connection with the forum state.... Second, if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice.

*OMI Holdings*, 149 F.3d at 1091–92 (internal citations and quotations omitted) (emphasis in original).

▉▉▉ The requirements of the Due Process clause are met "only so long as there exist 'minimum contacts' between the [nonresident] defendant and the forum State." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), *quoted in Far West*, 46 F.3d at 1074. "A defendant's contacts are sufficient if the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State.'" *Far West*, 46 F.3d at 1074, *quoting Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The "purposeful availment" requirement ensures "that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant must therefore have "deliberately" created some relationship with the forum state that would serve to make that state's potential exercise of jurisdiction foreseeable. *Id.* at 475–76, 105 S.Ct. 2174. "The Due Process Clause protects an individual's liberty interest in not being subject tot he binding judgments of a forum with which he has established no meaning-

ful contacts, ties, or relations." *Id.* at 471–72, 105 S.Ct. 2174, *quoting International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Purposeful availment requires that the non-resident defendant engage in activity that is "purposefully directed" at forum residents, or "expressly aimed" and "intentionally directed" at forum residents. *Asahi Metal Indus. Co., Ltd. v. Superior Court,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Calder v. Jones,* 465 U.S. 783, 789–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). To establish minimum contacts, the Plaintiff's claims must arise out of or result from "actions by the defendant *himself* that creates a substantial connections with the forum states." *Asahi,* 480 U.S. at 109, 107 S.Ct. 1026 (internal quotations omitted) (emphasis added); *see also OMI Holdings,* 149 F.3d at 1091. Consequently, a connection with the forum initiated by the Plaintiff or arising from the Plaintiff's place of residence, does not satisfy the purposeful availment requirement. *See id.; see also Hanson,* 357 U.S. at 251–54, 78 S.Ct. 1228 (holding that trustee's obligation that arose from trust not in forum state and "that was entered without any connection" with the forum state and not from any "privilege the defendant exercised in" forum state was insufficient to establish purposeful availment or minimum contacts).

In this case, State Street has not purposefully availed itself of the privilege to conduct activities in Utah. State Street's only contact with Plaintiff is the result of First Mortgage's purchase of the Trust's Sequence B Certificates from the FDIC. It is axiomatic that "courts have been unwilling to allow states to assert personal jurisdiction over foreign defendants where the defendant's presence in the forum arose from the unilateral acts of someone other that the defendant." *OMI Holdings,* 149 F.3d at 1092, *citing World–Wide Volkswagen,* 444 U.S. at 295, 100 S.Ct. 559.

Such is the case here. But for Plaintiff purchasing Sequence B Certificates held under the Trust from the FDIC, State Street would have no business here. To hold that the circumstances under review here would constitute purposeful availment in this instance would impermissibly "shift the focus of the judicial inquiry from the purposeful activities of the defendant within the forum to the random or fortuitous presence or residence of the plaintiff." *Young v. Colgate–Palmolive Co.,* 790 F.2d 567, 572 (7th Cir.1986).

State Street had fiduciary duties under the Trust long before First Mortgage purchased the Sequence B Certificates; it took no affirmative act to entice First Mortgage to make its purchase and it cannot be haled into this forum because of First Mortgage's unilateral action. *OMI Holdings,* 149 F.3d at 1092. Merely performing fiduciary obligations under the Trust does not commit State Street to the jurisdiction of this forum. *See Hanson,* 357 U.S. at 252–54, 78 S.Ct. 1228 (holding that *trustee's* obligation that arose from trust not in forum state and "that was entered without any connection" with the forum state and not from any "privilege the defendant exercised in" forum state was insufficient to establish purposeful availment or minimum contacts); *see also Vernon Johnson Family Ltd. P'ship v. Bank One Texas,* 80 F.Supp.2d 1127, 1133–34 (W.D.Wash.2000)(holding corporate trustees under indenture trust agreements were not subject to personal jurisdiction in forum despite fact that trustees owed fiduciary duties to noteholder residents of forum).

Finally, the fact that State Street has remitted Trust revenue and reports to Plaintiff in Utah and communicated with Plaintiff regarding the present controversy are both insufficient to satisfy the minimum contacts requirement. *See Hanson,*

357 U.S. at 252–54, 78 S.Ct. 1228 (finding no minimum contacts in spite of fact that trustee had remitted trust income into forum state); *Vernon Johnson,* 80 F.Supp.2d at 1130–34 (finding same in case where trustees issued promissory notes to investors in forum); *Far West,* 46 F.3d at 1077 (noting that "[i]t is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts"). Accordingly, First Mortgage has not met its burden of establishing that State Street has minimum contacts with Utah such that this court can exercise specific personal jurisdiction over State Street.[1]

**2.  Nexus**

Finally, the court does not have specific personal jurisdiction over State Street because First Mortagage's claims do no arise out of State Street's contacts with Utah. Specific personal jurisdiction is appropriate only if there is a nexus between State Street's Utah Contacts and First Mortgage's claims. *See Frontier Federal,* 675 F.Supp. at 1298. "[T]he nexus requirement is not met whenever there is a creation or breach of contract with a Utah plaintiff." *STV, Int'l Mktg.,* 750 F.Supp. at 1077. The nexus requirement is found "only where a nonresident defendant has engaged in *some conduct within the state* and *the plaintiff's claims against the defendant specifically arise from that conduct.*" *Harnischfeger,* 883 F.Supp. at 617–18 (emphasis added).

First Mortgage's claims against State Street do not arise from any conduct State Street performed in Utah. Plaintiff alleges that State Street breached its fiduciary duties under the Trust. As noted above, none of State Street's duties were conduct-

ed or performed in Utah. It is true that State Street sent Plaintiff correspondences in Utah, but Plaintiff does not allege that these limited contacts have anything to do with State Street's alleged breach of fiduciary duty. *See Harnischfeger,* 883 F.Supp. at 618 (finding that although defendant had sent employees to Utah to work on subcontract, nothing in plaintiff's complaint "allude[d] to those contacts as having anything to do with the [defendant's] alleged breach of the subcontract"); *Patriot Systems,* 21 F.Supp.2d at 1324 (finding no nexus because, although plaintiff's claims related to licensing and royalty agreements between parties, the claims did not arise from those agreements); *Hanson,* 357 U.S. at 251, 78 S.Ct. 1228 (finding no personal jurisdiction because cause of action was not one which arose "out of an act done or transaction consummated in the forum State"). Because all of the alleged acts or omissions which form the basis of First Mortgage's claims against State Street occurred, if at all, outside of Utah, First Mortgage cannot establish a nexus between State Street's Utah contacts and First Mortgage's claims. This court therefore does not have specific personal jurisdiction over Defendant State Street.

*Order*

For the reasons set forth above, Defendant State Street's motion to dismiss for lack of personal jurisdiction is GRANTED.

---

1.  Having determined that State Street does not have minimum contacts with Utah, the court need not address the second prong of the Due Process analysis and consider wheth-
er exercising jurisdiction over State Street would violate traditional notions of fair play and substantial justice. *See OMI Holdings,* 149 F.3d at 1091–92.