**HYDRO ENGINEERING, INC., Plaintiffs,**

v.

**LANDA, INC., and Philip Kircher, Defendants.**

**No. 2:02CV–0625DAK.**

United States District Court, D. Utah, Central Division.

Nov. 27, 2002.

---

**15.** *Id.*

Gary E. Atkin, Kenneth E. Atkin, Atkin & Associates, Salt Lake City, UT, for Plaintiffs.

Jeffrey L. Silvestrini, Richard A. Rappaport, Cohne Rappaport & Segal, Stephen J. Trayner, Strong & Hanni, Salt Lake City, UT, for Defendants.

## ORDER

KIMBALL, District Judge.

This matter is before the court on Defendants' motions to dismiss and to strike the affidavit of Alan McCormik. A hearing on the motion was held on November 18, 2002. At the hearing, Defendants were represented by Stephen Trayner and Plaintiff was represented by Kenneth E. Atkin. After carefully considering the pleadings, memoranda, and other materials submitted by the parties and the law and facts relating to this matter, and now being fully advised, the court renders the following ORDER.

## BACKGROUND

Plaintiff is a Utah corporation that manufactures, sells, designs and advertises hydro washing equipment in Utah and elsewhere. Defendant Landa Inc. is an Oregon corporation with its principle place of business in Camas, Washington. Defendant Phillip Kircher is employed as Landa's federal government sales manager. Defendant Landa generally does not sell directly to end-users. Instead, Defendant Landa sells to distributors, such as Royce Industries which is located in West Jordan, Utah. Defendant Landa operates a website accessible in Utah which lists Royce Industries as an authorized Landa dealer. Defendant Kircher resides in Jacksonville, Florida.

Plaintiff has asserted that Defendant Landa and Defendant Kircher ("Defendants") have committed trade libel, tortious interference with contract and other business torts. Plaintiff's allegations are based on five events: (1) an allegedly libelous e-mail sent June 21, 2001, to Fort Irwin in California, (2) an allegedly libelous e-mail sent August 8, 2001, to approximately 400 e-mail addresses and allegedly received in Utah, (3) a contract award to supply equipment to Rock Island, Illinois, that went to Defendant Landa instead of Plaintiff in October of 2000, (4) Defendant Landa filing a bid protest in September 1998 for a contract to supply equipment to an Air Force base in Yakota, Japan, and (5) Defendant Landa filing a bid protest in September of 2001 for a contract to supply equipment to Fort Irwin in California.

## DISCUSSION

Defendants moved to dismiss the Plaintiff's claims for lack of either general or personal jurisdiction. In addition, Defendants moved to dismiss the affidavit of Alan McCormick submitted with the Plaintiff's motion opposing the motion to dismiss.

### A. Motion to Strike

■ Defendants have filed a motion to strike the affidavit of Alan McCormick submitted with the Plaintiff's motion in opposition to the Defendants' motion to dismiss. Rule 56(e) states in part: "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The paragraphs referring to statements made by one particular customer, and other unspecified customers, are hearsay that Mr. McCormick would not be competent to testify to at trial. Similarly, Mr. McCormick was not a party to the contract that is referenced in the affidavit and, as such, lacks personal knowledge of the contract. Accordingly, those paragraphs of Mr. McCormick's affidavit containing inadmissible evidence are stricken.

### B. General Jurisdiction

■ To overcome a motion to dismiss for lack of personal jurisdiction, "the plaintiff must make only a prima facie case of personal jurisdiction in order to defeat the motion." *First Mortgage Corp. v. State Street Bank and Trust Co.*, 173 F.Supp.2d 1167, 1170 (D.Utah 2001). In determining whether personal jurisdiction exists, the law of the forum state is applied. *Id.* at 1171. Under Utah law, "for [general jurisdiction] to exist, the defendant must be conducting substantial and continuous local activity." *Arguello v. Industrial Woodworking Mach. Co.*, 838 P.2d 1120, 1122

(Utah 1992). The Utah Court of Appeals stated twelve factors that are relevant to the issue of general personal jurisdiction:

Whether the corporation defendant is: 1. engaged in business in the state; 2. licensed to do business in the state; 3. owning, leasing, or controlling property (real or personal) or assets in this state; 4. maintaining employees, offices, agents, or bank accounts in this state; 5. present in that shareholders reside in this state; 6. maintaining phone or fax listings in this state; 7. advertising or soliciting business in this state; 8. traveling to this state by way of salespersons, etc.; 9. paying taxes in this state; 10. visiting potential customers in this state; 11. recruiting employees in this state; 12. generating a substantial percentage of its national sales through revenue generated from instate customers.

*Soma Medical International v. Standard Chartered Bank*, 196 F.3d 1292, 1295–96 (10th Cir.1999) (quoting *Buddensick v. Stateline Hotel, Inc.*, 972 P.2d 928, 930–31 (Utah Ct.App.1998)).

■ An analysis of the *Buddensick* factors does not support the exercise of general jurisdiction over either Defendants Landa or Kircher. Defendant Landa does not own, lease, or control property in Utah. Defendant Landa is not licensed to do business in Utah nor does Landa maintain employees, offices, agents or bank accounts in Utah. Furthermore, Defendant Landa has no shareholders residing in Utah. From 1985–1991 Landa operated a store in Utah, but since then, Landa has not operated a store nor paid any related taxes in Utah.

Of the contacts that Landa does have with Utah, none can be characterized as "substantial and continuous" activity. First, while Landa does send an agent into Utah, the agent is in Utah for less than five days per year less than one time per year. Second, while Landa advertises by

**1134**

means of a website accessible in Utah, maintaining a website does not necessarily constitute substantial and continuous activity with States from which the website is accessible. In *Soma Medical International v. Standard Chartered Bank*, the Tenth Circuit explained that the activity based on internet websites is evaluated on a sliding scale. 196 F.3d at 1296. Websites that are passive and provide information do not establish a basis for personal jurisdiction, while websites through which business is conducted firmly establishes a basis for personal jurisdiction. *Id.* In *Soma*, the court determined that because the website at issue did little more than provide information, the website was not the type that could subject the operator to personal jurisdiction. *Id.* at 1297. The Landa website, like the *Soma* website, merely provides information and cannot, without more, provide a basis for general jurisdiction. Finally, consideration of these contacts and the amount of business engaged in by Defendant Landa in Utah does not constitute a "substantial percentage of [Landa's] national sales through revenue generated from [Utah] customers." Defendant Landa sells 1.8% of its national sales through a Utah distributor with an additional 0.05% directly to Utah consumers. Since 1.85% does not constitute a substantial percentage of Landa's sales, this factor also weighs in Defendant Landa's favor. Therefore, an analysis of the *Buddensick* factors does not support exercising general jurisdiction over Defendant Landa.

█ Similarly, Defendant Kircher's contacts with Utah do not establish a basis for exercising general jurisdiction. Of the types of contact described by the twelve *Buddensick* factors, the only contact Defendant Kircher has with Utah is direct sales amounting to $10,000, contact that cannot be characterized as substantial and continuous. *See Harnischfeger Engineers, Inc. v. Uniflo Conveyor, Inc.*, 883 F.Supp.

608, 612–13 (D.Utah 1995) (finding that advertising in national publications found in Utah, soliciting business in Utah, and selling a small percentage of overall sales in Utah were not contacts sufficient to assert general jurisdiction). Therefore, the *Buddensick* factors also do not support exercising general jurisdiction over Defendant Kircher.

**C. Specific Jurisdiction**

█ The law of the forum state must be applied to determine specific personal jurisdiction. *First Mortgage Corp.*, 173 F.Supp.2d at 1171. The Utah Supreme Court has stated that "specific jurisdiction gives a court power over a defendant only with respect to claims arising out of particular activities of the defendant in the forum state. For such jurisdiction to exist, the defendant must have certain minimum local contacts." *Arguello*, 838 P.2d at 1122.

█ " 'In Utah, a three-part inquiry is used to determine whether specific personal jurisdiction exists: (1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute; (2) a 'nexus' must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirements of federal due process.' " *First Mortgage Corp.*, 173 F.Supp.2d at 1173 (quoting *Harnischfeger Engineers, Inc. v. Uniflo Conveyor Inc.*, 883 F.Supp. 608, 612–13 (D.Utah 1995)). By statute, the legislature declared that the long-arm statute should be "applied so as to assert jurisdiction to the fullest extent permitted by the due process clause." Utah Code Ann. § 78–27–22. Moreover, the Utah Supreme Court has stated that it "frequently make[s] a due process analysis first because any set of circumstances that satisfies due process will also satisfy the long-arm statute." *SII MegaDiamond, Inc. v. American Supera-*

*brasives Corp.,* 969 P.2d 430, 433 (Utah 1998). Thus, the court must first determine whether the exercise of personal jurisdiction meets federal due process standards. *See Soma,* 196 F.3d at 1298.

■■ Under due process standards, the court must establish that the defendant has sufficient minimum contacts with the forum state such that he would anticipate being haled into court in that state. *See First Mortgage Corp.,* 173 F.Supp.2d at 1173. " 'Within this inquiry [the court] must determine whether the defendant purposefully directed its activities at residents of the forum, . . . and whether the plaintiff's claims arises out of or results from actions by the defendant *himself* that create a substantial connection with the forum state.' " *Id.* (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091–92 (10th Cir.1998)). For seemingly tenuous ties to the forum state, courts have looked to the "effects test" established in *Calder v. Jones,* which requires that the defendant's actions be expressly aimed with the forum jurisdiction and the forum jurisdiction to be the focal point of the tort and its harm. *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1080 (10th Cir.1995) (citing *Calder v. Jones,* 465 U.S. 783, 789, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)).

■■ Applying the *Calder* test, the Tenth Circuit has stated that "the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly interfered with a forum resident does not necessarily establish that the defendant possesses the constitutionally minimum contacts." *Far West Capital,* 46 F.3d at 1079. Instead, personal jurisdiction turns on "the extent to which the defendant has purposely availed itself of the forum's laws." *Id.* The "extent" is determined by the circumstances of the contact with the forum state. *Id.* at 1080. In addition, the court should consider whether the defendant's actions were expressly aimed at the forum state and whether the forum state was the focal point of the tort. *Id.*

■■ Although, as discussed above, Defendants engage in some direct business with Utah customers and maintain a website accessible to Utah customers, these contacts are not the basis of the alleged tortious acts and, as such, are not considered in a finding of specific jurisdiction. Of the five allegedly tortious event only one, the e-mail sent on August 8, 2001 by Defendant Kircher, potentially occurred in Utah. Accordingly, the determination of personal jurisdiction must focus on that e-mail.

Plaintiffs have alleged trade libel or defamation in connection with the email. Critical to both the allegation of defamation and personal jurisdiction is the publication of this e-mail in Utah. *See DeBry v. Godbe,* 992 P.2d 979 (Utah 1999) (stating that publication is an element of defamation under Utah law); *Keeton v. Hustler Magazine, Inc.* 465 U.S. 770, 777, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (finding personal jurisdiction because the tort of libel occurs wherever the offending material is circulated). In this case, there was a single e-mail that *might* have reached Utah. Of the approximately 400 e-mail addresses to which the e-mail was sent, plaintiff has identified three addresses which could reasonably be perceived as Utah e-mail addresses.[1] However, beyond the identifica-

---

**1.** Attached to Plaintiff's complaint is a copy of the original e-mail sent by Defendant Kircher. Of the approximately 400 e-mail addresses, three e-mails are circled: nielson.cameron@ut.ngb.army.mil, scot.ol-

sen@ut.ngb.army.mil, and Bernhard.Spoerri@ut.ngb.mil. Because UT is the postal identifier for Utah, it is not an unreasonable presumption that the holders of these e-mail

tion of these three address, Plaintiff has failed to provide any other evidence that the e-mail was received in Utah. Accordingly, Plaintiff has failed to provide any evidence that the allegedly libelous material was published in Utah.

Although in *Burt v. Board of Regents of the Univ. of Neb.*, the Tenth Circuit held that a single defamatory letter mailed into the forum state satisfied the minimum contacts prong of the due process test, in *Burt* there was no question that the mail was received and published in the forum state. 757 F.2d 242, 244–45 (10th Cir.1985), *cert. granted sub nom. Connolly v. Burt*, 474 U.S. 1004, 106 S.Ct. 521, 88 L.Ed.2d 454 (1985), *cert. vacated on grounds of mootness*, 475 U.S. 1063, 106 S.Ct. 1372, 89 L.Ed.2d 599 (1986). Unlike the *Burt* case, there has been no evidence beyond a mere allegation that the e-mail at issue was published in Utah. *See Harnischfeger*, 883 F.Supp. at 613 (noting that because a letter was never published in Utah, "the letter does not implicate Utah in any way").

Moreover, the sending of a single mass email does not pass the *Calder* effects test. *Calder*, 465 U.S. at 789, 104 S.Ct. 1482. Because only three of the approximately 400 e-mail addresses to which this message was sent could reasonably be perceived as Utah addresses, the e-mail cannot be considered to be targeted at the forum state. Similarly, the small number of allegedly Utah recipients also indicates that Defendants' activity was not expressly aimed at the forum state. Therefore, the exercise of specific jurisdiction would violate the federal due process clause and, necessarily, the Utah long-arm statute.

addresses have Utah ties. However, the address does not identify the particular state in which the e-mail was actually received, opened and therefore, published. *See Kaempe v. Myers*, 2001 WL 1397291, *7

## CONCLUSION

Based upon the above reasoning, Defendants' Motion to Dismiss and Motion to Strike are GRANTED and this case is dismissed for lack of jurisdiction.

(S.D.Ind.2001) (noting that there is no control over where a party receives an e-mail because an e-mail "could have [been] retrieved from anywhere in the world.")