**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 1 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SOMA MEDICAL INTERNATIONAL,
a Delaware corporation,

Plaintiff - Appellant,

v.                                                    No. 98-4138

STANDARD CHARTERED BANK, an
international banking corporation;
LEONARD D. FONG, an individual,

Defendants - Appellees.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. NO. 96-CV-85-B)**

---

Jason G. Landess, Las Vegas, Nevada (Peter W. Guyon, Salt Lake City, Utah, on
the briefs), for Appellant.

Scott D. Larmore (Leo R. Beus and Michael R. Devitt with him on the brief),
Beus, Gilbert & Devitt, P.L.L.C., for Appellee Standard Chartered Bank.

---

Before **ANDERSON** , **McKAY** , and **HENRY** , Circuit Judges.

---

**ANDERSON** , Circuit Judge.

---

Plaintiff Soma Medical International, Inc., appeals from the dismissal of this diversity action against Standard Chartered Bank ("SCB") for lack of personal jurisdiction. Soma also appeals the denial of an interlocutory discovery order. We affirm the dismissal of this case for lack of personal jurisdiction over SCB, and we affirm the denial of the discovery order.

## BACKGROUND

Soma is a Delaware corporation primarily engaged in the business of researching, developing, and manufacturing medical monitoring devices. Its principal place of business is in Bountiful, Utah. SCB is an international banking institution incorporated under the laws of Great Britain, with branches in many cities throughout the world, including Hong Kong.

In August 1993, Soma opened a bank account with SCB's Hong Kong branch office. Soma intended to engage in a joint venture with the Chinese government to manufacture medical monitoring devices in China, and the Chinese government agreed to fund the venture provided Soma had certain funds on deposit in Hong Kong. Soma alleges that SCB was aware of the arrangement between Soma and the Chinese government and that SCB agreed to allow funds to be withdrawn from Soma's account upon presentation of an instrument bearing the signatures of both Mark Leishman and Robert Walker.

By mid-October 1993, Soma had approximately $250,000 in its account with SCB. As the district court found:

> At some point during the next eight months, Defendant Leonard D. Fong created a fraudulent signature card for the account, and submitted the card to [SCB]. The fraudulent signature added Fong as a signatory, and authorized Fong to withdraw funds from the account without the signatures of either Leishman or Walker.

> On May 13, 1994, Fong sent a letter to [SCB], demanding that Standard close Soma's account and transfer all funds to Fong's account in Las Vegas, Nevada. On November 14, 1994, Soma contacted [SCB] to inquire concerning the status of the account. Much to Soma's surprise, [SCB] informed Soma that approximately $250,000 had been transferred to the Las Vegas, Nevada account of Leonard D. Fong–supposedly at Soma's request.

Op. & Order at 2-3, Appellant's App. Vol. I at 83-84.

Soma filed this diversity action against SCB in federal district court in Utah, alleging breach of contract, negligence, breach of implied covenant, and civil conspiracy, all arising out of SCB's wrongful disbursement of funds to Fong upon Fong's unauthorized signature. Soma alleges consequential damages of $11,000,000.

SCB filed a motion to dismiss, asserting that the district court lacked personal jurisdiction over SCB. The court granted Soma leave to engage in limited jurisdictional discovery, including permitting Soma to propound a set of interrogatories and request the production of documents. The court denied Soma's motion to compel.

With discovery completed, the district court ruled on SCB's motion to dismiss for lack of personal jurisdiction. The court held that, under Utah law, it had neither general nor specific jurisdiction over SCB. We agree.

## DISCUSSION

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1074 (10th Cir. 1995). Thus, Utah law governs the exercise of personal jurisdiction over SCB. Soma, as the plaintiff, "'bears the burden of establishing personal jurisdiction over the defendant.'" OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting Rambo v. American Southern Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988)). When, as in this case, a district court grants a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." Id. We review de novo the district court's dismissal for lack of personal jurisdiction. Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1533 (10th Cir. 1996).

Soma alleges it has made a prima facie showing of general and specific personal jurisdiction.

## I. General Jurisdiction

As the Utah Supreme Court has stated, "[g]eneral personal jurisdiction permits a court to exercise power over a defendant without regard to the subject of the claim asserted. For such jurisdiction to exist, the defendant must be conducting substantial and continuous local activity in the forum state." Arguello v. Woodworking Mach. Co., 838 P.2d 1120, 1122 (Utah 1992); see also Harnischfeger Eng'rs, Inc. v. Uniflo Conveyor, Inc., 883 F. Supp. 608, 611-12 (D. Utah 1995); Buddensick v. Stateline Hotel, Inc., 972 P.2d 928, 930-31 (Ut. Ct. App. 1998), cert. denied, 982 P.2d 88 (Utah 1999), cert. denied, 68 U.S.L.W. 3079 (1999).

The Utah Court of Appeals recently observed that the following factors are relevant to the issue of whether general personal jurisdiction exists:

> Whether the corporate defendant is
> 1. engaged in business in this state;
> 2. licensed to do business in this state;
> 3. owning, leasing, or controlling property (real or personal) or assets in this state;
> 4. maintaining employees, offices, agents, or bank accounts in this state;
> 5. present in that shareholders reside in this state;
> 6. maintaining phone or fax listings within this state;
> 7. advertising or soliciting business in this state;

8. traveling to this state by way of salespersons, etc.;
9. paying taxes in this state;
10. visiting potential customers in this state;
11. recruiting employees in the state;
12. generating a substantial percentage of its national sales through revenue generated from in-state customers.

Buddensick , 972 P.2d at 930-31.  It is undisputed that SCB does none of those things.  Soma argues that, because SCB filed a small number of UCC financing statements and recorded several instruments in Utah, all evidencing various SCB security interests, and because it filed five civil cases in Utah prior to 1992 to recover monies and/or foreclose on trust deeds, SCB is subject to general jurisdiction.  We disagree.  Those are not the kinds of activities which Utah courts, and federal courts applying Utah law, have held constitute the kind of "substantial and continuous local activity" necessary to subject SCB to general jurisdiction.   See, e.g., Beck v. D'Amour S.A. , 923 F. Supp. 196, 199-200 (D. Utah 1996);  Harnischfeger Eng'rs, Inc. , 883 F. Supp. at 612;   Frontier Fed. Savings & Loan Ass'n v. National Hotel Corp. , 675 F. Supp. 1293, 1296 (D. Utah 1987);  Buddensick , 972 P.2d at 931.

Soma further argues SCB's maintenance of a website, accessible from Utah, also constitutes "substantial and continuous local activity" for general jurisdiction purposes.  While neither our court nor the Utah Supreme Court has specifically addressed this issue yet, a federal district court judge in Utah has addressed the circumstances in which a website will subject an entity to personal

jurisdiction in Utah. See Patriot Systems, Inc. v. C-Cubed Corp., 21 F. Supp. 2d 1318, 1323-24 (D. Utah 1998). The court in Patriot Systems adopted the analysis of several other courts, which "reveals three general categories along a 'sliding scale' for evaluating jurisdiction." Id. at 1324. The categories are as follows:

> First, personal jurisdiction is established when "a defendant clearly does business over the Internet," such as entering into contracts which require the "knowing and repeated transmission of computer files over the Internet." Second, exercising personal jurisdiction is not appropriate when the Internet use involves "[a] passive Web site that does little more than make information available to those who are interested in it." Under these circumstances, "a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions." Third, a middle category encompasses "interactive Web sites where a user can exchange information with the host computer." Whether the exercise of jurisdiction is appropriate depends upon "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."

Id. (quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997)) (other quotations omitted); see also Mink v. AAAA Dev. LLC, 190 F.3d 333, 336 (5th Cir., 1999) (adopting Zippo court analysis); Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419 (9th Cir. 1997) (noting that "the common thread [in cases involving jurisdiction via an Internet website], well stated by the district court in Zippo, is that 'the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the

Internet.'") (quoting Zippo, 952 F. Supp. at 1124); SF Hotel Co. v. Energy Invs., Inc., 985 F. Supp. 1032, 1034 (D. Kan. 1997).

In its response to SCB's motion to dismiss for lack of personal jurisdiction, Soma alleged that "Standard Chartered maintains an internet website offering information concerning Standard Chartered's services and soliciting business from all over the planet, which allows access from anywhere, including Utah." Pl.'s Mem. of P. & A. in Opp'n to [SCB's] Mot. to Dismiss for Lack of Personal Jurisdiction at 7, Appellant's App. Vol. I at 81-G. It referenced an "Exhibit A-1," which was not included in the record on appeal. The record does include a copy of pages from SCB's website dated January 28, 1998. Appellant's App. Vol. III at 268-285. The district court did not specifically address the website in its jurisdictional analysis.

Assuming Soma adequately raised the issue of the website before the district court, we have no difficulty concluding that it is the type of website which does not subject its creator, SCB, to personal jurisdiction in Utah, under any standard promulgated by any court. The website appears to be a "passive Web site that does little more than make information available to those who are interested" and one in which SCB "has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions." Zippo Mfg. Co., 952 F. Supp. at 1124. Soma has failed to carry even its relatively light burden of

- 8 -

making a prima facie showing that the website is anything more than such a passive informational site. Cf. Purco Fleet Servs., Inc. v. Towers, 38 F. Supp. 2d 1320, 1324 (D. Utah 1999) (noting that "plaintiff has shown that [defendant] used its web site to solicit business from a Utah resident").

We therefore affirm the district court's conclusion that Soma has failed to make a prima facie case that SCB is engaged in the kind of "substantial and continuous local activity" necessary to subject SCB to general personal jurisdiction.

## II.  Specific Jurisdiction

"[T]he evaluation of specific jurisdiction in Utah mandates a three-part inquiry: '(1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute; (2) a "nexus" must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirements of federal due process.'" National Petroleum Mkt'g, Inc. v. Phoenix Fuel Co., 902 F. Supp. 1459, 1465 (D. Utah 1995) (quoting Harnischfeger Eng'rs, Inc., 883 F. Supp. at 612-13); see also Far West Capital, Inc., 46 F.3d at 1074.

Utah's long-arm statute provides in pertinent part as follows:

- 9 -

> Any person . . . who in person or through an agent does any of the
> following enumerated acts, submits himself . . . to the jurisdiction of
> the courts of this state as to any claim arising out of or related to:
>
> > (1) the transaction of any business within this state;
> > (2) contracting to supply services or goods in this state;
> > (3) the causing of any injury within this state whether
> > tortious or by breach of warranty;

Utah Code Ann. § 78-27-24. The legislature has declared that the long-arm statute must be interpreted broadly "so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." § 78-27-22; see also Starways, Inc. v. Curry, 980 P.2d 204, 206 (Utah 1999) ("We have held that the Utah long-arm statute 'must be extended to the fullest extent allowed by due process of law.'") (quoting Synergetics v. Marathon Ranching Co., 701 P.2d 1106, 1110 (Utah 1985)). The long-arm statute itself defines the transaction of business broadly, as "activities of a non-resident person, his agents, or representatives in this state which affect persons or businesses within the state of Utah." Utah Code Ann. § 78-27-23.

The Utah Supreme Court has stated that it "frequently make[s] a due process analysis first because any set of circumstances that satisfies due process will also satisfy the long-arm statute." SII Megadiamond, Inc. v. American Superabrasives Corp., 969 P.2d 430, 433 (Utah 1998); see also Far West Capital, Inc., 46 F.3d at 1075 (proceeding directly to constitutional analysis).

- 10 -

Accordingly, we proceed to determine whether the exercise of personal jurisdiction over SCB meets federal due process standards.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)); see also OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1090 (10th Cir. 1998). Accordingly, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1979) (quoting International Shoe, 326 U.S. at 316).

The "minimum contacts" necessary for specific personal jurisdiction are established "'if the defendant has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities.'" OMI Holdings, Inc., 149 F.3d at 1091 (quoting Burger King Corp., 471 U.S. at 472) (other quotations omitted). If the defendant's activities create sufficient minimum contacts, we then consider "whether the exercise of personal jurisdiction over the defendant offends

- 11 -

'traditional notions of fair play and substantial justice.'" Id. (quoting Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 113 (1987)).

We therefore examine the quantity and quality of SCB's contacts with Utah, including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," Burger King Corp., 471 U.S. at 479, to determine whether the exercise of personal jurisdiction over SCB comports with due process.

In establishing Soma's account at its Hong Kong branch, SCB did the following: (1) sent by mail a signature card to Soma's principals in Utah; (2) sent two letters to Soma's Utah bank soliciting signature verification; (3) initiated fourteen other "written communications" with Soma concerning Soma's account with SCB; (4) created an account number for Soma and "acknowledg[ed] the business relationship between [SCB] and Soma at Soma's Salt Lake City, Utah address"; and (5) created internal records of Soma's account and maintained various documents evidencing wire transfers of funds and various other activities relating to Soma's account with SCB. Appellant's Br. at 6-8. Additionally, as indicated above, and not in connection with Soma's account, SCB maintained a website; filed several UCC-1 financing statements in Utah; recorded several instruments in Utah; and filed five civil actions in Utah state courts between 1989 and 1992, seeking to protect and/or enforce various interests of SCB. Because

Soma's claims in this case are completely unrelated to these latter activities, we ignore these latter activities in determining whether the exercise of specific personal jurisdiction over SCB in this case satisfies the constitutional due process standard.

As both parties acknowledge, the record contains no information on how or why Soma opened its account with SCB. Soma alleges that Bank One, its bank in Bountiful, Utah, had a "relationship" with SCB and that is why Soma established its account with SCB. However, when directly asked the question at oral argument, Soma's counsel was unable to identify any specific information in the record which further elaborates on either the nature of the relationship between Bank One and SCB or how and why Soma established its account with SCB. SCB's counsel also acknowledged at oral argument that the record is silent as to how Soma selected SCB for purposes of the account at issue in this case. Thus, the record reveals only that SCB opened an account at its Hong Kong branch for Soma, created various internal documents evidencing that account's existence, corresponded by fax and letter with Soma concerning that account, and received and distributed funds into and out of that account, including the final transfer of approximately $250,000 to a bank in Nevada. We affirm the district court's conclusion that those contacts are insufficient to satisfy due process.

First, Soma has not demonstrated that SCB solicited Soma's business. "[S]olicitation is some evidence suggesting purposeful availment." Far West Capital, Inc., 46 F.3d at 1076 (citing Burger King Corp., 471 U.S. at 473). Indeed, on the record before us, it is as likely that SCB entered into a banking relationship with Soma because of Soma's unilateral decision to select SCB as its bank. We note that "courts have been unwilling to allow states to assert personal jurisdiction over foreign defendants where the defendant's presence in the forum arose from the unilateral acts of someone other than the defendant." OMI Holdings, Inc., 149 F.3d at 1092. As the district court observed, "[t]he fact that Soma happened to be a resident of Utah was of no consequence to Standard Chartered." Op. & Order at 10, Appellant's App. Vol. I at 91. Indeed, "there is no indication that Utah had anything but a fortuitous role in the parties' past dealing or would have any role in their continuing relationship." Far West Capital, Inc., 46 F.3d at 1080; cf. SII Management, Inc., 969 P.2d at 435-36 (finding minimum contacts standard met when foreign corporation entered into distribution agreement and purchased products on weekly basis from Utah corporation).

Second, the bulk of SCB's remaining contacts with Utah consisted of a limited number of faxes and other written communications concerning the account, along with a few wire transfers of funds. "It is well-established that

- 14 -

phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." Far West Capital, Inc. , 46 F.3d at 1077; cf. Harnischfeger Eng'rs, Inc. , 883 F. Supp. at 615 (noting that "numerous," perhaps "hundreds," of phone calls and letters contributed to finding of minimum contacts).

Finally, we cannot conclude that SCB's maintenance of a passive website, merely providing information to interested viewers, constitutes the kind of purposeful availment of the benefits of doing business in Utah, such that SCB could expect to be haled into court in that state. We therefore affirm the district court's dismissal of all claims against SCB for lack of personal jurisdiction. [1]

### III.  Discovery Order

When the magistrate judge to whom discovery issues had been referred granted Soma's motion to engage in limited discovery concerning jurisdictional issues, Soma propounded a request for production of documents, to which SCB filed a response containing general objections and exceptions. Soma then filed a motion to compel discovery, which the magistrate judge denied. Soma appeals that denial.

---

[1]Because we conclude that Soma has failed to establish that SCB has minimum contacts with the state of Utah, we need not proceed to the next step of the due process analysis–i.e., whether the exercise of personal jurisdiction over SCB could offend "traditional notions of fair play and substantial justice." Asahi Metal Industry Co., 480 U.S. at 113.

- 15 -

While it is problematic whether we have jurisdiction over this appeal from the discovery order, since Soma's notice of appeal failed to specifically designate that order, see Cunico v. Pueblo Sch. Dist. No. 60, 917 F.2d 431, 444 (10th Cir. 1990),[2] were we to address the merits of the issue we would affirm the magistrate judge's order, for the following reasons.

We review discovery rulings for an abuse of discretion. Pippinger v. Rubin, 129 F.3d 519, 533 (10th Cir. 1997). Thus, we review the denial of Soma's motion to compel discovery for such abuse. See GWN Petroleum Corp. v. OK-TEX Oil & Gas, Inc., 998 F.2d 853, 858 (10th Cir. 1993). Soma argues that SCB's objections to Soma's discovery request should have specified more particularly the nature of the objections, and that the magistrate judge abused his discretion in failing to recognize that SCB's failure to object with more particularity constituted a waiver of any further right to object. Soma further argues the magistrate judge abused his discretion in denying Soma's motion to compel.

Recognizing the wide discretion given the magistrate judge in discovery rulings, we cannot say that he abused his discretion in his rulings in this case. We therefore AFFIRM the denial.

---

[2]In Cunico, we stated that "[o]ur appellate review is limited to final judgments or parts thereof that are designated in the notice of appeal." Cunico, 917 F.2d at 444 (citing Fed. R. App. P. 3(c)).

- 16 -

For the forgoing reasons we AFFIRM the judgment of the district court dismissing this case for lack of personal jurisdiction over SCB. We also AFFIRM the denial of Soma's motion to compel discovery.