**Patricia SMITH, Plaintiff,**

v.

**BASIN PARK HOTEL, INC., Defendant.**

No. 01–CV–357–K(J).

United States District Court, N.D. Oklahoma.

Dec. 27, 2001.

Gerald Wayne Wright, Wright & Wright, Tulsa, OK, for Plaintiff.

W. Gil Steidley, Jr., Steven P. Shreder, Steidley & Neal, Tulsa, OK, for Defendant.

## *ORDER* [1]

JOYNER, United States Magistrate Judge.

Now before the Court is Basin Park Hotel, Inc.'s motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(2) and (3), for lack of personal jurisdiction and venue. Doc. No. 6. The Court set this motion for evidentiary hearing, and received evidence from the parties on December 4, 2001. *See* Doc. No. 18. Having considered the parties' briefs and the evidence received on December 4th, the Court finds that Plaintiff has failed to carry her burden of establishing that this Court has personal jurisdiction over Basin Park Hotel ("BPH").

## I. INTRODUCTION

### A. BACKGROUND

Plaintiff is a resident of Tulsa, Oklahoma. Defendant is a corporation incorporated in the state of Arkansas, with its only place of business in Eureka Springs, Arkansas. Defendant operates the Basin Park Hotel in Eureka Springs. Plaintiff stayed at Defendant's hotel in May 1999. In her Amended Complaint, Plaintiff alleges that on May 30, 1999, she slipped, fell and injured herself in a stairwell at Defendant's hotel. Plaintiff has sued Defendant for negligence, alleging that Defendant negligently maintained the stairwell's hand rails, carpet, risers and lighting. *See* Doc. No. 2.

### B. DEFENDANT'S CONTACTS WITH OKLAHOMA

At the December 4th evidentiary hearing, Plaintiff established that Defendant had the following contacts with Oklahoma:

---

**1.** This Order is entered pursuant to the consent of the parties. *See* Doc. No. 10 and 28 U.S.C. § 636.

Defendant maintains a website with the following address: http://www.basinpark.com.[2] This website is accessible by anyone with access to the Internet, including Oklahoma residents with access to the Internet. The BPH website provides general information about the hotel. *See* Plaintiff's Hearing Exhibit 3. The website lists a 1–800 number for the hotel, and provides users with the ability to send an email to the hotel requesting information. *Id.* There is no evidence that Plaintiff ever viewed or used BPH's website.

The BPH website also allows users to "make an on-line reservation request." *Id.* (emphasis added). When this link is selected, the user is asked to fill out an online form, which requests basic information including the user's email address and the dates the user would like to stay at the hotel. *See* http://www.basinpark.com/reservations.html (Dec. 11, 2001). Once the user completes and electronically submits the form, the form is sent via email to BPH, and a webpage is displayed on the user's monitor which states: "Thanks for your request. We will contact you shortly!" *See* http://basinpark.com/thanks.html (Dec. 11, 2001). The user also receives an immediate email at the address specified in the form submitted to the hotel. The email again thanks the user for her "inquiry," and provides detailed information about the hotel's amenities. *See* Plaintiff's Hearing Exhibit 4.

The Greater Eureka Springs Chamber of Commerce ("GESCC") maintains a website at http://www.eurekaspringschamber.com. This website is accessible by anyone with access to the Internet, including Oklahoma residents with access to the Internet. The website contains a link for member services, and a link on the member services page for Motels and Hotels. *See* http://www.eurekaspringschamber.com/member_listings/index.html. BPH is listed on the motels and hotels page, with a reference to BPH's address, phone number, and website. *See generally* Plaintiff's Hearing Exhibit 3. There is no evidence in the record that Plaintiff ever viewed or used GESCC's website.

Travelocity.com is a one-stop travel website on the Internet which provides online air, car and hotel reservations. *See* http://www.travelocity.com. This website is accessible by anyone with access to the Internet, including Oklahoma residents with access to the Internet. Through Travelocity's website, a user can actually book, with a credit card, a room at Defendant's hotel. *See* Plaintiff's Hearing Exhibit 2. There is no evidence in the record regarding the nature of the relationship between BPH and Travelocity. There is also no evidence in the record that Plaintiff ever viewed or used Travelocity's website.

The Northwest Arkansas Tourism Association ("NATA") prints and distributes a Vacation Information Guide titled the *Northwest Arkansas Ozark Mountains* for the 2001 season. *See* Plaintiff's Hearing Exhibit 1. The guide contains a two page layout, advertising the city of Eureka Springs, Arkansas, where the Defendant's hotel is located. One page of the layout is taken out by the Eureka Springs Visitors Bureau, and the other is take out by the Eureka Springs Chamber of Commerce. There is no information on either page about Defendant's hotel. On the visitors bureau page, however, there is a picture of Defendant's hotel. The NATA brochure indicates that it was "paid for with a com-

---

**2.** The parties agreed at the December 4th hearing that the BPH website which exists today is the same website which existed at the time of Plaintiff's alleged injury. The parties also did not object to the Court reviewing the website for itself online, which the Court has done.

bination of state funds and private regional association funds." There is, however, no evidence that Defendant is connected in any way with the NATA brochure. Plaintiff did receive a copy of the brochure at her Broken Arrow, Oklahoma residence, although not until after her stay at Defendant's hotel.

■ Defendant argues that these contacts are not sufficient under the due process clause of the United States Constitution to subject it to this Court's jurisdiction.[3]

## II. DISCUSSION

### A. PROCEDURE AND BURDEN OF PROOF

■ Because the personal jurisdiction issue raised by Defendant does not require the resolution of factual issues which also relate to the merits of this litigation, the Court held a pretrial evidentiary hearing to resolve Defendant's motion to dismiss. *See FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir.1992) (holding that district courts have wide "discretion in determining the procedure to employ in considering a motion to dismiss for lack of jurisdiction"). "[W]hen the district court holds a pretrial evidentiary hearing to resolve factual disputes relating to jurisdictional questions, the plaintiff has the burden to prove facts supporting jurisdiction by a preponderance of the evidence." *Id.* Plaintiff must, therefore, establish by a preponderance of the evidence that this Court has personal jurisdiction over BPH.

### B. STANDARDS FOR EVALUATING PERSONAL JURISDICTION

■ The United States Supreme Court has held that individuals have a liberty interest, protected by the due process clause, in not being subject to the binding judgments of a forum with which the individual has established no meaningful contacts, ties or relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In a diversity case, not only must the due process clause be satisfied, but the law of the forum state must also authorize the exercise of jurisdiction under the circumstances. Thus, in a diversity case the test for exercising long-arm jurisdiction over a nonresident of the forum is to determine first whether the exercise of jurisdiction is authorized by a forum statute and, if so, whether such exercise of jurisdiction would be consistent with the constitutional requirements of due process. In Oklahoma, however, this two-part inquiry collapses into a single due process analysis because the current Oklahoma long-arm statute provides that an Oklahoma court "may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." *See* 12 Okla. Stat. § 2004(F). *See also Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1416–17 (10th Cir.1988) (establishing the personal jurisdiction inquiry under Oklahoma law).

■ A federal court may, consistent with the due process clause of the Constitution, exercise personal jurisdiction over a

---

**3.** Defendant also argues that venue is not appropriate in this district. In response, Plaintiff refers to an Oklahoma venue statute. However, in a diversity action venue is controlled by federal law, not state law. *See Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). Pursuant to 28 U.S.C. § 1391, a diversity action such as this may be brought in any "judicial district where any defendant resides," and a corporation like Defendant is deemed to reside in any "judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(a)(1) and (c). Thus, the venue inquiry under Rule 12(b)(3) is the same as the personal jurisdiction inquiry under Rule 12(b)(2).

nonresident defendant so long as there exist minimum contacts between the defendant and the forum state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The defendant's contacts with the forum state must be such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Id.* at 292. The sufficiency of a defendant's contacts must be evaluated by examining the defendant's conduct and connections with the forum state to assess whether the defendant has purposefully availed itself of the privilege of conducting activities within the forum state. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). *See generally, Rambo,* 839 F.2d at 1417 (reiterating this general test for personal jurisdiction).[4]

■ Jurisdiction over corporations may be either general or specific. If a defendant has purposefully directed its activities at residents of the forum, and the injuries alleged arise out of or relate to those activities, a court may, consistent with the due process clause, exercise "specific" jurisdiction over the defendant. In contrast, when the suit does not arise from or relate to the defendant's contacts with the forum, a court may exercise "general" jurisdiction over the defendant based on the defendant's presence in or accumulated contacts with the forum. *Rudzewicz,* 471 U.S. at 473 n. 15, 105 S.Ct. 2174; *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 415 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Howev-

er, because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's "continuous and systematic general business contacts." *Helicopteros,* 466 U.S. at 416, 104 S.Ct. 1868. *See generally OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1090–91 (10th Cir.1998); and *Rambo,* 839 F.2d at 1418. Thus, to establish general jurisdiction, the defendant must be conducting substantial and continuous local activity within the forum state. *Soma Medical International v. Standard Chartered Bank,* 196 F.3d 1292, 1295 (10th Cir. 1999).

## C. ANALYSIS

### 1. Specific Personal Jurisdiction

■ Plaintiff has made no attempt to demonstrate that the injuries she allegedly received in the stairwell of Defendant's Arkansas hotel arise out of Defendant's alleged contact with, or activities in, Oklahoma. Plaintiff has not established any nexus between Defendant's alleged forum-related contacts and her negligence cause of action against Defendant. *See OMI Holdings,* 149 F.3d at 1095 (recognizing that for specific jurisdiction to exist, there must be a nexus "between Defendant's forum-related contacts and the Plaintiff's cause of action"). The Court finds, therefore, that Plaintiff has not established that he Court has specific personal jurisdiction over Defendant. *See Dagesse v. Plant Hotel N.V.,* 113 F.Supp.2d 211, 217–18 (D.N.H.2000) (finding no specific jurisdic-

---

4. The "minimum contacts" test protects a defendant, who has no meaningful contact with a state, from the burdens of defending a lawsuit in a forum where the substantive and procedural laws may be quite different from those with which the litigant is familiar.

Moreover, "it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *Woodson,* 444 U.S. at 291, 100 S.Ct. 559.

tion under very similar facts).[5] Rather, Plaintiff is relying on the Court's ability to assert general personal jurisdiction over Defendant.

## 2. General Personal Jurisdiction

For a court to assert general jurisdiction over a nonresident defendant, the plaintiff must demonstrate that defendant has continuous and systematic contacts with the forum state. In *Soma*, the Tenth Circuit found the following factors helpful in determining whether general personal jurisdiction exists as to a non-resident corporation:

Whether the corporate defendant is

1. engaged in business in this state;

2. licensed to do business in this state;

3. owning, leasing, or controlling property (real or personal) or assets in this state;

4. maintaining employees, offices, agents, or bank accounts in this state;

5. present in that shareholders reside in this state;

6. maintaining phone or fax listings within this state;

7. advertising or soliciting business in this state;

8. traveling to this state by way of salespersons, etc.;

9. paying taxes in this state;

10. visiting potential customers in this state;

11. recruiting employees in the state;

12. generating a substantial percentage of its national sales through revenue generated from in-state customers.

*Soma*, 196 F.3d at 1295–96. The evidence presented by Plaintiff only implicates factors 7 and 12. Plaintiff has presented no evidence that Defendant is licensed to, or in fact does, business in Oklahoma or pays taxes in Oklahoma. There is no evidence that Defendant has any stockholders, employees, property, bank accounts, phone lines or fax lines in Oklahoma. There is also no evidence that Defendant's employees travel to Oklahoma within the scope of their employment, or that Defendant travels to Oklahoma to recruit employees or customers.

 At the December 4th evidentiary hearing, Plaintiff presented computer printouts from Defendant's reservation system in an attempt to demonstrate that Defendant's hotel generates a substantial percentage of its revenue from reservations made by Oklahoma residents. Exhibit 5 is a copy of a computer printout from Defendant's reservation system for the February 1998 to May 2001 time frame. Plaintiff's witness, Albert Chaires, testified without contradiction that Exhibit 5 establishes that, from February 1998 to May 2001, 734 Oklahoma residents checked-in at Defendant's hotel. Plain-

---

**5.** In *Dagesse*, the plaintiff slipped and fell in a puddle of water in his Aruba Marriott hotel room. Plaintiff brought suit against the Aruba Marriott hotel in New Hampshire, arguing that jurisdiction in New Hampshire was proper because the hotel's parent company, Marriott International, advertised the Aruba Marriott on television in New Hampshire and maintained a website, accessible in New Hampshire, which allowed the making of online reservations at the Aruba Marriott. *Id.* at 217. The court determined, however, that plaintiff's negligence cause of action for his slip and fall did not arise out of Marriott's alleged contacts with New Hampshire. The court refused, therefore, to exercise specific jurisdiction over the Aruba Marriott. *Id.* at 218. *See also Rodriguez v. Circus Circus Casinos, Inc.*, No. 00–Civ–6559(GEL), 2001 WL 21244, at *2 (S.D.N.Y. Jan. 9, 2001) (personal injury action did not arise out of Las Vegas hotel's alleged contacts with New York).

tiff's witness did not, however, provide any information regarding the total number of guests at Defendant's hotel during this same time frame. There is, therefore, no evidence before the Court which establishes what percentage of Defendant's business is from Oklahoma residents.[6] The Court finds that this evidence is insufficient to carry Plaintiff's burden of establishing by a preponderance of the evidence that Defendant's hotel generates a substantial percentage of its revenue from reservations made by Oklahoma residents.

■ Plaintiff points to websites maintained by Defendant, Travelocity and the Eureka Springs Chamber of Commerce, and a brochure mailed to Plaintiff by the Northwest Arkansas Tourism Association as vehicles through which Defendant advertises and solicits business within Oklahoma. Plaintiff argues that these advertising and solicitation activities within Oklahoma constitute the type of substantial and continuous local activity which is sufficient to give this Court general personal jurisdiction over Defendant. The Court does not agree.

Plaintiff has put on no evidence, and offered no authority, which would permit the Court to conclude that activities by NATA, ESCC or Travelocity can be attributed to Defendant. Absent more, the Court finds that activities by NATA, ESCC and Travelocity, in Oklahoma and elsewhere, are their own activities and not activities by Defendant. Thus, neither the NATA brochure[7] nor the ESCC or Travelocity websites create contacts by Defendant which qualify for consideration under the minimum contacts test used to evaluate personal jurisdiction. *See Burger King,* 471 U.S. at 475, 105 S.Ct. 2174 (only the defendant's conduct, and not the unilateral activity of another party or a third person, are relevant to the personal jurisdiction inquiry).

■ As to BPH's website, Plaintiff relies on the sliding scale classification of websites established by Judge McLaughlin in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa. 1997). The categories established by Judge McLaughlin are as follows:

[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the oppo-

---

6. Plaintiff also introduced Exhibit 6 at the December 4th hearing, which is a copy of a computer printout from Defendant's reservation system for the May 2001 to December 2001 time frame. As with Exhibit 5, Exhibit 6 provides information regarding the residence of Defendant's guests. Plaintiff has, however, provided the Court with no information regarding the total number of guests during the time frame covered by Exhibit 6 and no information regarding the number of Oklahoma residents reflected on Exhibit 6. Together Exhibits 5 and 6 are several hundred pages. If Plaintiff is unwilling to review these documents to extract the relevant information from them, the Court will not perform that task for her.

7. Even if the brochure were attributable to BPH, it has been held that advertising such as this, which solicits business in a foreign jurisdiction is not the type of systematic and continuous conduct needed to establish general personal jurisdiction. *See, e.g., Gehling v. St. George's School of Medicine, Ltd.,* 773 F.2d 539 (3rd Cir.1985); and *Fields v. Ramada Inn Inc.,* 816 F.Supp. 1033 (E.D.Pa.1993).

site end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo*, 952 F.Supp. at 1123–24 (internal citations omitted).

A thorough and exhaustive discussion of the sliding scale approach established by Judge McLaughlin in *Zippo* can be found at Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 1073.1 (2002). In *Zippo*, Judge McLaughlin was conducting a specific jurisdiction analysis, not a general jurisdiction analysis, when he articulated the sliding scale quoted above. Professors Wright and Miller conclude, and the Court agrees, that

the Zippo case's sliding scale approach should be of little value in a general jurisdiction analysis. What a defendant does on many—but not necessarily all—"active" and "interactive" websites will not rise to the level of the systematic and continuous contacts that are re-

quired for the exercise of general jurisdiction, and the same obviously is true of a defendant's activities on its "passive" websites.... Despite this, several district courts have applied the Zippo test in a general jurisdiction analysis, although none have found general jurisdiction to exist based merely upon a defendant's Internet contacts.

*Id.* at p. 331 (footnotes omitted). The *Zippo* sliding scale test is, therefore, "most useful to a court as part of its consideration of the purposeful availment prong of a specific personal jurisdiction analysis." *Id.* at p. 341.[8]

As Professors Wright and Miller recognize,

[t]he mere maintenance of a website in one state, by itself, apparently will not be sufficient to subject a defendant to the general in personam jurisdiction of a federal court in another state. Even though a given defendant's website is accessible at all times (that the website is running) from every state in the nation—indeed, throughout the world—the existing decisions indicate that mere accessibility is not sufficient for general jurisdiction. Instead, to be subject to general jurisdiction in a given state, a defendant must have continuous and systematic contacts with that state.

*Id.* at p. 329 (footnotes omitted).

The Tenth Circuit has entered the personal jurisdiction based on Internet con-

---

**8.** All of the cases cited by Plaintiff in support of the exercise of personal jurisdiction over Defendant are specific, and not general, jurisdiction cases. *See Inset Systems, Inc. v. Instruction Set, Inc.*, 937 F.Supp. 161 (D.Conn. 1996); *Maritz v. Cybergold, Inc.*, 947 F.Supp. 1328 (E.D.Mo.1996); *Heroes, Inc. v. Heroes Foundation*, 958 F.Supp. 1 (D.D.C.1996); and *Zippo*, 952 F.Supp. at 1119. In fact, all of these cases are trademark infringement cases in which the plaintiffs were alleging that some aspect of the defendants' websites in-

fringed their trademark. In each of these cases, the courts upheld the exercise of specific personal jurisdiction finding that the plaintiffs' claims arose out of the defendants' Internet activities, and that, using the *Zippo* test, the defendants had purposefully directed their Internet contacts at the forum, and that the contacts were not merely fortuitous. None of these cases support the assertion of general personal jurisdiction against Defendant in this case.

tacts fray on only two occasions. *See Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244 (10th Cir. 2000); and *Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292 (10th Cir.1999). *Intercon* was a specific jurisdiction case, and the Court did not conduct a general jurisdiction analysis.[9]

In *Soma*, the plaintiff, a Delaware corporation with its principal place of business in Utah, wanted to engage in a joint venture with the Chinese government to manufacture medical monitoring devices in China. The Chinese government agreed to fund the venture on the condition that plaintiff place a certain amount of funds on deposit in Hong Kong. Plaintiff established a bank account with the defendant, a Great Britain banking institution with branches in Hong Kong. Plaintiff submitted a signature card with only two signatures on it, and defendant was to allow withdrawals from plaintiff's account only upon presentation of an instrument bearing both signatures. At some point, however, another individual, a Mr. Fong, created a fraudulent signature card and submitted it to the defendant. The fraudulent card permitted Mr. Fong to make withdrawals from plaintiff's account on his signature alone. Using this card, Mr. Fong caused approximately $250,000.00 to be transferred out of plaintiff's account. Plaintiff sued the defendant bank in Utah, alleging breach of contract, negligence and wrongful disbursement. The bank moved to dismiss, arguing that it was not subject to jurisdiction in Utah. *Soma*, 196 F.3d at 1294–95.

The plaintiff in *Soma* argued that the bank was subject to jurisdiction in Utah because the bank maintained a website, accessible from Utah, which offered information about the bank's services and solicited business from all over the world. *Soma*, 196 F.3d at 1297. There is no other description of the bank's website in the Tenth Circuit's opinion. The Tenth Circuit found, however, that the bank's website was a passive website that did little more than make information available to those interested; one in which the bank simply posted information accessible to users in foreign jurisdictions. *Id.* The Court found that this type of activity, along with the filing of a small number of UCC statements and lawsuits in Utah, was not the type of "substantial and continuous local" activity necessary to subject the bank to general personal jurisdiction in Utah. *Id.*

While the description of the bank's website in *Soma* is sparse, the Court finds that BPH's website does not do substantially more than what was described in *Soma*. BPH's website offers information about the hotel's services and solicits business (i.e., reservations) from all over the world. The Court finds that if the bank's website in *Soma* was insufficient to establish the type of "substantial and continuous local" activity necessary to subject the bank to general personal jurisdiction in Utah, BPH's website is also insufficient to subject BPH to general personal jurisdiction in Oklahoma.

The result which the Court finds to be compelled by the Tenth Circuit's decision in *Soma* is confirmed by cases involving hotels, restaurants and resorts similar to

---

**9.** In *Intercon,* the Court held that an Internet access provider doing business on the east coast could be sued in Oklahoma for continuing to improperly route emails to plaintiff's Oklahoma web server for four months after having been notified that the emails were being improperly routed to Oklahoma. The Court determined that the plaintiff's claim arose out of the defendant's forum-related Internet contacts, and that the defendant purposefully directed its conduct at Oklahoma for four months after being notified that emails were being improperly routed to Oklahoma. *Intercon,* 205 F.3d at 1247–48.

BHP.[10] In *Dagesse* for example, the plaintiff slipped and fell in a puddle of water in his Aruba Marriott hotel room. Plaintiff brought suit against the Aruba Marriott hotel in New Hampshire, arguing that general personal jurisdiction in New Hampshire was proper in part because the hotel's parent company, Marriott International, maintained a website, accessible in New Hampshire, which allowed the making of online reservations at the Aruba Marriott. *Dagesse*, 113 F.Supp.2d at 217. The court rejected the plaintiff's argument holding that

> [t]he consensus among courts that have focused explicitly on the issue is that general jurisdiction cannot be founded solely on the existence of a defendant's internet website. As many courts have recognized, to hold that the mere existence of an internet website establishes general jurisdiction would render any individual or entity that created such a web site subject to personal jurisdiction in every state. Such a rule "would eviscerate the personal jurisdiction requirement as it currently exists . . . ."

*Id.* at 221 (quoting *Millennium Enterprises v. Millennium Music*, 33 F.Supp.2d 907, 910 (D.Or.1999)) (internal citations omitted).

A web site will subject a defendant to general personal jurisdiction only when the defendant has actually and deliberately used its website to conduct commercial transactions on a sustained basis with a substantial number of residents of the forum. *Dagesse*, 113 F.Supp.2d at 222–23. Plaintiff in this case has presented no such evidence. There is no evidence that any commercial transactions are actually completed on BPH's website. The website merely permits a user to submit an email to BPH requesting reservation information. No reservation is confirmed over the website. Plaintiff also offered no evidence to establish that the BPH website is accessed on a sustained basis by a substantial number of residents in Oklahoma. *See, e.g., Mink v. AAAA Development LLC*, 190 F.3d 333, 336–37 (5th Cir.1999) (refusing to exercise personal jurisdiction based on a web site which functioned in a manner very similar to BPH's website). Plaintiff has, therefore, failed to carry her burden of establishing that Defendant has sufficient contacts with Oklahoma to make this Court's exercise of general personal jurisdiction consistent with due process.

## III. TRANSFER

At the December 4th evidentiary hearing, Plaintiff requested that the Court transfer this case to the Western District of Arkansas, Harrison Division, if the Court determined that this district lacked personal jurisdiction over Defendant. Defendant has not opposed such a transfer.

If a court determines that it does not have jurisdiction over a civil case, it may "in the interest of justice, transfer such action . . . to any other court in which the action . . . could have been brought at the time it was filed." 28 U.S.C. § 1631. Further, if a court determines that plaintiff has brought her case in the wrong venue, the court may "in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The Court finds that, given potential statute of limitations problems faced by plaintiff if

---

10. *See Dagesse v. Plant Hotel, N.V.*, 113 F.Supp.2d 211 (D.N.H.2000); *Rodriguez v. Circus Circus Casinos, Inc.*, No. 00–CIV–6559(GEL), 2001 WL 21244 (S.D.N.Y. Jan. 9, 2001); and *Grutkowski v. Steamboat Lake* *Guides & Outfitters, Inc.*, No. Civ.A. 98–1453, 1998 WL 962042 (E.D.Pa. Dec.28, 1998); *Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295, 300–301 (S.D.N.Y.1996).

this case were dismissed, the interests of justice would best be served by transferring this case to the Western District of Arkansas, where Defendant is subject to the Court's exercise of personal jurisdiction.

### CONCLUSION

Defendant's motion to dismiss for lack of personal jurisdiction and venue ˙ is **GRANTED in part and DENIED in part**. Doc. No. 6. The Court does find that Defendant is not subject to personal jurisdiction in this district and that venue is not appropriate in this district. Rather than dismiss this case, however, the Court directs the Court Clerk to transfer this action to the Western District of Arkansas, Harrison Division.

IT IS SO ORDERED.